# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

BRIGHTER SKY PRODUCTIONS, LLC
131 West 35th Street
New York, New York 10001,

    and

DAN TRAMON
815 Ramapo Valley Road
Oakland, New Jersey 07436,

    and

DIANA BELKOWSKI
13 H Brookside Heights
Wanaque, New Jersey 07465

    and

CARL ANTHONY TRAMON
301 West 45th Street, #14A
New York, New York 10036,

        Plaintiffs,

    v.                                   CIVIL ACTION NO. 5:17-cv-003254

MARRIOTT INTERNATIONAL, INC.
c/o Corporate Creations Network, Inc.
5400-D Big Tyler Road
Charleston, WV 25313,

    and

MARRIOTT THEATRE
Ten Marriott Drive
Lincolnshire, IL 60069,

    and

MICHAEL MAHLER

and

AARON THIELEN,

        Defendants.

# COMPLAINT

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Law of the United States, 17 U.S.C. §§ 101 *et seq.*

2. This Court has jurisdiction of this action under 17 U.S.C. §§ 101 *et seq* and 28 U.S.C. § 1338 (a).

3. This Court has supplemental jurisdiction over the related Count IV and Count V in that these claims are so related to the above federal claims that they form part of the same case.

4. This Court has personal jurisdiction over defendants in that they have the requisite minimum contacts under the West Virginia Long-Arm Statute and/or personal jurisdiction is otherwise proper under the laws of West Virginia and constitutional requirements of due process under the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6. Plaintiff BRIGHTER SKY PRODUCTIONS, LLC ("Brighter Sky") is a New Jersey Limited Liability Company.  Plaintiffs Dan Tramon, Diana Belkowski, and Carl Anthony Tramon are the members of Plaintiff Brighter Sky.  Plaintiff Brighter Sky is the owner of all Live Stage Rights for "*Rocket Boys:  The Musical* ("*Rocket Boys*")."

7. Plaintiff DAN TRAMON ("D. Tramon") is a well-respected composer/lyricist residing in the State of New Jersey. He is a Julliard Prep graduate and attended Columbia University and has been involved in the New York musical theatre for most of his life. He performed piano recitals at Lincoln Center, performed boy soprano roles at the Met, and took courses at the Institute of Audio Research. He has been associated with various Broadway shows as a composer for pre-show music, production sound engineer, associate sound designer, music programmer, and orchestration and performance of digital music. Plaintiff D. Tramon was one of the composers/lyricists for "*Rocket Boys: The Musical*" in conjunction with Plaintiff Diana Belkowski. Plaintiff D. Tramon owns the copyright to all compositions/lyrics he created alone or in conjunction with Plaintiff Diana Belkowski for the musical.

8. Plaintiff DIANA BELKOWSKI ("Belkowski") is a Julliard alumnus. She has travelled nationwide as a member of the Presidential Arts Committee. A long-time Director of Sacred Music, she has composed music for children and adult choirs. Her other compositions include *Clarissa* (Circle Rep Theatre), a 50-song educational series for Random House, and TV theme and credit music. Plaintiff Belkowski and Plaintiff D. Tramon are two-time (consecutive year unprecedented) winners of the ASCAP/Disney Musical Theatre Award for *Flyer* and "*Rocket Boys.*" Plaintiff Belkowski resides in New Jersey. Plaintiff Belkowski owns the copyright to all compositions/lyrics she created alone or in conjunction with Plaintiff D. Tramon for "*Rocket Boys: The Musical.*"

9. Plaintiff CARL ANTHONY TRAMON ("C.A. Tramon") is an individual who resides in New York. He is an alumnus of the Royal Academy for Dramatic Arts in London,

England. Plaintiff C.A. Tramon has had a prodigious career in the theatre with Broadway, National Tours, and Equity Regional Productions. He acted in television shows and commercials. He directs theatrical performances and co-books theatrical performances, including "*Rocket Boys: The Musical*." Plaintiff C.A. Tramon owns the copyright to the stage book he created alone or in conjunction with Homer H. Hickam, Jr. ("Hickam"), author of the novel Rocket Boys.

10. Defendant MARRIOTT INTERNATIONAL, INC. ("Marriott") is a corporation with its principal place of business in Maryland. Defendant Marriott owns, controls, and/or operates 23 hotels in West Virginia, including "Courtyard Beckley" located at 124 Hylton Lane, Beckley, West Virginia and "Fairfield Inns and Suites" located at 125 Hylton Lane, Beckley, West Virginia.

11. Defendant Marriott caused tortious injury in this state by an act or omission outside this state and regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from goods used or consumed or services rendered in West Virginia. Defendant Marriott, by infringing on the copyrighted works developed in West Virginia by Plaintiffs, purposely acted to avail itself of the actions of Plaintiffs in the State of West Virginia where Plaintiffs developed and refined the musical "*Rocket Boys*." Further, Defendant Marriott purposely directed its actions and the harmful effects of its actions by wrongfully using the copyrighted works of Plaintiffs, resulting in Plaintiffs being prevented from further productions of "*Rocket Boys*" in West Virginia.

12. Defendant MARRIOTT THEATRE is located in Lincolnshire, Illinois in Marriott's Lincolnshire Resort. Defendant Marriott Theatre is owned, operated, and/or

    controlled by Defendant Marriott. Plaintiffs cannot determine with certainty that Marriott Theatre is a separate legal entity from Defendant Marriott and have named Marriott Theatre as a Defendant in an effort to include all proper parties.

13. Defendant AARON THIELEN ("Thielen") is the Artistic Director for Marriott Theatres in Lincolnshire, Illinois. Plaintiffs believe Defendant Thielen resides in the State of Illinois. Defendant Thielen wrote the stage book for "*October Sky*," which was performed at the Defendant Marriott Theatre August 19, 2015 through October 18, 2015. Defendant Thielen, by infringing on the copyrighted works developed in West Virginia by Plaintiffs, purposely acted to avail itself of the actions of Plaintiffs in the State of West Virginia where Plaintiffs developed and refined the musical "*Rocket Boys.*" Further, Defendant Thielen purposely directed its actions and the harmful effects of its actions by wrongfully using the copyrighted works of Plaintiffs, which resulted in Plaintiffs being prevented from further productions of "*Rocket Boys*" in West Virginia.

14. Defendant MICHAEL MAHLER is a composer/lyrist who created the music and lyrics for "*October Sky*." Plaintiffs believe Defendant Mahler resides in the State of Illinois. Defendant Mahler, by infringing on the copyrighted works developed in West Virginia, purposely acted to avail itself of the actions of Plaintiffs in the State of West Virginia where Plaintiffs developed and refined the musical "*Rocket Boys.*" Further, Defendant Mahler purposely directed its actions and the harmful effects of its actions by wrongfully using the copyrighted works of Plaintiffs, which resulted in Plaintiffs being prevented from further productions of "*Rocket Boys*" in West Virginia.

15. The Defendants planned, acted in concert and conspired to infringe upon Plaintiffs' copyright and damage Plaintiffs' economic interests in furtherance of Defendants' own economic interests.

16. Hickam is the author of "Rocket Boys," a memoir which chronicles his life as teenager in the coal camp of Coalwood, West Virginia and the struggle he had for his father's approval when he decided to build rockets rather than become a coal miner and stay in Coalwood.

17. In 1996, Hickam and Universal Pictures, a division of Universal City Studios, LLC, ("Universal") entered into a Life Story Option/Purchase and Consulting Agreement and its accompanying documents. These documents granted Universal the rights to the novel Rocket Boys. A movie entitled "October Sky," based upon the book, was developed and distributed by Universal.

18. In 2006, Hickam was approached by the experienced and highly respected Broadway musical team, and siblings, Plaintiff C.A. Tramon, Plaintiff D. Tramon, and Plaintiff Belkowski, who told Hickam that they wanted to develop his book Rocket Boys into a Broadway musical. After being impressed by a dramatic presentation made by these Plaintiffs, as well as the music which they had already written to be used in a Rocket Boys Broadway-style musical, Hickam reviewed the 1996 Agreement with Universal. Thereafter, Hickam contacted Universal and to the extent that he did not already have the rights to produce a live stage performance of the book, Hickam requested that Universal grant him such rights. Universal and Hickam thereafter entered into the Amendment to the 1996 Agreement, a true and correct copy of which is attached hereto as Exhibit 1 and fully incorporated herein.

19. The Amendment provided, in part, as follows:

    <u>Live Stage Rights</u>:  Universal hereby grants Owner the right to create a derivative work based on the Work and the Picture in the form of a live stageplay ("Play") to be written by Owner, i.e. all rights of production and use of the Work and the Picture on the legitimate speaking stage by living actors appearing and performing in the immediate presence of an audience without any recordation, transmission or broadcast thereof intended for aural or visual reception at places away from the place of performance ("Live Stage Rights").  Owner's Live Stage Rights shall be exclusive for a period of five (5) years from the date hereof, after which period Owner's Live Stage Rights shall become non-exclusive, i.e., Universal shall have the right to grant non-exclusive Live Stage Rights to third parties commencing on October 10, 2012. Additionally, in connection with the non-exclusivity, Universal shall notify owner if it intends to license non-exclusive Live Stage Rights to a third party and shall consult with Owner before granting such rights.

20. No provision in the Amendment limited the term of the non-exclusive license. Thus, Hickam was granted such Live Stage Rights in perpetuity.

21. Hickam and Plaintiffs began the development of the musical "*Rocket Boys*."

22. In March 2008, *Rocket Boys* was chosen as one of three top winners in The Academy for New Musical Theatre's inaugural "Search for New Musicals" competition. The project was awarded a full staff reading and workshop that was held in late April 2008.

23. In early 2008, Plaintiff Belkowski and Plaintiff D. Tramon won the ASCAP/Disney Musical Theatre Award in New York for "*Rocket Boys*."

24. On May 28, 2008, a staged reading of "*Rocket Boys*" was held at Merrimack Hall in Huntsville, Alabama. Actors, with scripts in hand, went through the three-hour show with recorded music and live piano playing as accompaniments.

25. On June 7, 2010, "*Rocket Boys*" had an industry presentation in New York City. This was an invitation only performance meant for those in the performing arts industry. A representative from Universal attended this event. The musical featured an all-

Broadway cast, including Mark McVery, Andre Ward, Brooke Sunny Moriber, and Terri Klausner. Robert Piccardo also made an appearance.

26. The presentation received good reviews. Jen Gunnels, writing for the New York Review of Science Fiction in September 2010, felt that "Rocket Boys pulls you into the action and quickly invests you in the characters with a passion rarely seen in a group of people with only three rehearsals." Jen Gunnels also had praise for the music: "One tune leaves you humming along to the history of thrust, and 'Entropy' gives voice to the frustration, fear, and grief of a young man who believes himself responsible for the death of a mentor in a mining accident. Each song is memorable, and rather than interrupting the action, pulls the audience further into the story."

27. The same article contained a quote from Plaintiff C.A. Tramon outlining the next steps for "*Rocket Boys*:"

> But, the next logical step for the musical, after the typical short workshop to iron out any remaining kinks, is to premiere it in a prominent regional theater before moving it to a Broadway venue. We have a number of meetings lined up in the next few weeks to explore some of those options, and we're going to commit to the best possible option.

28. An "Underlying Rights and Author Collaboration Agreement" was entered into among Plaintiff Brighter Sky for the services of Plaintiff D. Tramon, Plaintiff Belkowski, Plaintiff C.A. Tramon and Hickam (as owner of certain underlying rights in the Play). In the Collaboration Agreement, Hickam granted his rights to produce a Live Stage Play exclusively to Plaintiff Brighter Sky. The Collaboration Agreement further provided that Plaintiff D. Tramon and Plaintiff Belkowski would act as the composers/lyricist and Plaintiff C.A. Tramon and Hickam would act as bookwriters. A true and accurate copy of the agreement is attached hereto as Exhibit 2 and fully

incorporated herein. This Agreement was a continuation of the on-going relationship between the individuals named in the Agreement.

29. "*Rocket Boys*" was further honed in performance runs at Theatre West Virginia in Beckley, West Virginia, in the summers of 2011 through 2013.

30. After the 2011 performance in Beckley, West Virginia, it was noted the shows were sold out and the performances received standing ovations and the soundtrack was top-notch. (http://recparecjigehs.blogspot.com/2011/11/homer-hits-home-run-as-rocket-boys.html, accessed May 21, 2017.)

31. During the performances in Beckley, West Virginia, "*Rocket Boys*" was revised, reshaped, and crafted in a lengthy, expensive, and careful development requiring many hours of effort, evaluations of audience reactions, creation of new scenes and songs and deletions of others, and honing of characters and overall structure of the stage play book and music.

32. More industrial readings were performed for investors and interest began to build toward an eventual Broadway run and a national tour.

33. On October 10, 2012, the exclusive period for which Hickam had the Live Stage Rights expired by its terms. Hickam's right of production and use of the Work and Picture in "*Rocket Boys*" became non-exclusive.

34. Based upon information and belief, Plaintiffs state that Christopher Herzberger, the Vice President of Live Theatricals at Universal and Defendant Thielen discussed creating a Live Stage Play from the movie October Sky, sometime shortly after October 18, 2012.

35. On or about May 29, 2013, Hickam received an email from Keith Blau ("Blau"), Vice President/Legal Affairs at Universal, advising him that Universal was interested in licensing "non-exclusive" stage rights to *October Sky* (the "*October Sky Musical*") to Marriott International, to be performed at its theatre in Lincolnshire, Illinois.

36. On or about May 30, 2013, Christophe Herzberger ("Herzberger"), the Vice President of Live Theatricals at Universal spoke with Hickam and told him that it was more than an intention, that Universal had already agreed that Marriott could produce a version based on the Work and the movie October Sky.

37. On September 24, 2014, Herzberger requested that Hickman participate in "a phone call for you to have an opportunity to 'meet' Aaron [Thielen] and Michael [Mahler], who are working on October Sky with us."

38. Herzberger and Universal assured Hickam and the Plaintiffs that they would continue to permit performances of "*Rocket Boys*." Subsequent to May of 2013, Hickam and the Plaintiffs continued to invest their own funds towards the production of "*Rocket Boys*," investing well over $500,000.00 from their personal funds, plus months of unpaid effort, in order to further envelop the musical. Moreover, in good faith, Plaintiffs solicited others to invest in "*Rocket Boys*," and received verbal promises for over 9 million dollars from third-party investors who were enthusiastically on board to take the musical to an off-Broadway theater and then either to a larger theater on Broadway or a national tour.

39. In 2013, discussions were held between the Plaintiffs and Theatre West Virginia, a 501(c) corporation, for the licensing of the musical "*Rocket Boys*" to Theatre West Virginia in perpetuity. Thus, the musical would become a historical presentation

every year as part of the Theatre's line-up. An agreement was reached between Plaintiffs and Theatre West Virginia in principle for the licensing.

40. In the spring of 2015, "*Rocket Boys*" had secured an engagement for The Legacy Theatre in Atlanta, Georgia from April 17 through May 10.

41. On May 9, 2015, Herzberger attended a showing of "*Rocket Boys"* at the Legacy Theatre.

42. On June 1, 2015, Plaintiff Belkowski registered as the copyright holder of "Rocket Boys - Theme & Variation" with the United States Copyright Office.

43. On June 16, 2015, a letter signed by Keith Blau, Vice-President of Legal Affairs for Universal Pictures was sent to counsel for Hickam halting further performances of "*Rocket Boys*" at least until after the October Sky musical had completed its run at Defendant Marriott.

44. This communication effectively shut down indefinitely the production of "*Rocket Boys*" after substantial sums of money had been spent by Hickam and Plaintiffs along with months and years of unpaid work.

45. From or about August 19, 2015 through October 18, 2015, the musical "*October Sky*" was presented by Defendant Marriott and Defendant Universal at the Marriott Theatre in a Lincolnshire, Illinois.

46. Plaintiffs are informed and believe Universal had ample opportunities to obtain both the stageplay book and musical score which Hickam and the Plaintiffs, in good faith, handed over to Universal several times and also asked their representatives to attend performances which they did. Therefore, the stageplay book was readily available to Defendant Marriott through Universal.

47. Moreover, Plaintiffs are informed and believe and thereon allege that music used in the *October Sky* Musical was substantially similar to that of the music used by Plaintiffs in "*Rocket Boys*," the musical score readily available to Defendant Marriott through Universal.

## COUNT I-COPYRIGHT INFRINGEMENT

48. For Count I of this Complaint, all Plaintiffs incorporate the allegations contained in Paragraphs 1 (One) through 47 (Forty-Seven) as if fully restated herein.

49. Through their conduct as set forth in the preceding allegations, all of the Defendants, acting individually and/or acting together, have infringed on Plaintiffs' copyright in and to "*Rocket Boys: The Musical*" in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

50. Defendants' acts of infringement of Plaintiffs' rights are willful, intentional, and purposeful with complete indifference and disregard for those rights.

51. More specifically, Defendants copied the motifs and patterns of the music from the musical "*Rocket Boys*," have made scene choices and sequences that aped Plaintiffs' creation, used language exclusively written for the "*Rocket Boys*" which were not in the novel or the motion picture, and included scenes and dialog that are the same as those used in "*Rocket Boys*,", too many times to be coincidental all without Plaintiffs' permission, authorization, or consent.

52. The musical "*October Sky*" is substantially similar to the musical "*Rocket Boys*," and infringes upon the copyrighted creation of the Plaintiffs.

53. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

54. As a direct and proximate result of the infringement by Defendants, Plaintiffs are entitled to damages in an amount to be proven at trial.

55. Plaintiffs are also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

56. Alternatively, Plaintiffs who are registered copyright owners are entitled to the maximum statutory damages as provided in 17 U.S.C. § 504(c).

57. Plaintiffs are further entitled to their full costs and attorneys fees pursuant to 17 U.S.C. § 505.

58. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' copyrights.

## COUNT II-CONTRIBUTORY INFRINGEMENT

59. For Count II of this Complaint, all Plaintiffs incorporate the allegations contained in Paragraphs 1 (One) through 58 (Fifty-Eight) as if fully restated herein.

60. Through their conduct as set forth in the preceding allegations, Defendant Marriott and Defendant Marriott Theatre, have knowingly contributed to, induced and/or caused Defendants Mahler and Thielen, to infringe Plaintiffs' copyrights in "*Rocket Boys*" by their actions in inducing and/or causing the stage book and music of "*Rocket Boys*" to be used, in whole or part, in "*October Sky.*"

61. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

62. As a direct and proximate result of the infringement by Defendants, Plaintiffs are entitled to damages in an amount to be proven at trial.

63. Plaintiffs are also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

64. Alternatively, Plaintiffs who are registered copyright owners are entitled to the maximum statutory damages as provided in 17 U.S.C. § 504(c).

65. Plaintiffs are further entitled to their full costs and attorneys fees pursuant to 17 U.S.C. § 505.

66. Defendant Universal and Defendant Herzberger's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' copyrights.

## COUNT III-VICARIOUS LIABILITY

67. For Count III of this Complaint, all Plaintiffs incorporate the allegations contained in Paragraphs 1 (One) through 66 (Sixty-Six) as if fully restated herein.

68. Defendant Marriott and Defendant Marriott Theatre had the right to and ability to supervise and control the infringing conduct of Defendants Mahler and Thielen, and had an obvious and direct financial interest in the infringement.

69. Defendant Marriott and Defendant Marriott Theatre, through it agents, employees, and servants, had the opportunity to have access to the stage book and music for *"Rocket Boys"* through Universal and failed to prevent and/or encouraged infringement of the copyrighted works owned by Plaintiffs.

70. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

71. As a direct and proximate result of the infringement by Defendants, Plaintiffs are entitled to damages in an amount to be proven at trial.

72. Plaintiffs are also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

73. Alternatively, Plaintiffs who are registered copyright owners are entitled to the maximum statutory damages as provided in 17 U.S.C. § 504(c).

74. Plaintiffs are further entitled to their full costs and attorneys fees pursuant to 17 U.S.C. § 505.

75. Defendant Marriott and Defendant Marriott Theatre's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' copyrights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Brighter Sky Productions, LLC, Dan Tramon, Diana Belkowski, and Carl Anthony Tramon pray for judgment against the Defendants, Marriott International, Inc., Marriott Theatre, Michael Mahler, and Aaron Thielen, jointly and severally, as follows:

1. For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed either directly or indirectly, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504;

2. For preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert or participation with Defendants, from: (a) directly or indirectly reproducing, distributing, publicly performing, or otherwise infringing in any manner on Plaintiffs' copyrighted works, whether now in existence or hereinafter created;

3. For restitution of Defendants' unlawful proceeds;

4. For an accounting and the imposition of a constructive trust;

5. For punitive and exemplary damages;

6. For prejudgment interest according to law;

7. For Plaintiffs' attorneys' fees and full costs incurred in this action; and,

8. For such other and further relief as the Court may deem just and proper.

PLAINTIFFS
By counsel,

/s/ Stephen P. New
Stephen P. New (#7756)
Amanda J. Taylor (#11635)
The Law Office of Stephen P. New
P.O. Box 5516
Beckley, WV 25801
Telephone: (304) 250-6017
Fax: (304) 250-6012