IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BRIGHTER SKY PRODUCTIONS, LLC, et al.,

        Plaintiffs,

v.                                                        CIVIL ACTION NO. 5:17-cv-03254

MARRIOTT INTERNATIONAL, INC., et al.,

        Defendants.

**MEMORANDUM OPINON AND ORDER**

The Court has reviewed the *Defendants' Motion to Dismiss* (Document 8), the *Memorandum of Law in Support of Defendants' Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction* (Document 9), the *Plaintiffs' Response to Defendants' Motion to Dismiss* (Document 13), and the *Defendants' Reply Memorandum of Law* (Document 16). The Court has also reviewed the *Plaintiffs' Motion for Leave to File Amended Complaint* (Document 14), the *Memorandum of Law in Support* (Document 15), the *Defendants' Memorandum of Law in Opposition* (Document 19), and the *Complaint* (Document 1). For the reasons stated herein, the Court finds that the motion to dismiss should be granted and the motion to amend should be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiffs, Brighter Sky Productions, LLC ("Brighter Sky"), Dan Ramon, Diana Belkowski, and Carl Anthony Tramon, initiated this lawsuit with a *Complaint* (Document 1) filed in this Court in September of 2017. They name as Defendants Marriott International, Inc., Marriott Theatre, Michael Mahler, and Aaron Thielen.

In 1998, Homer H. Hickam, Jr., published his book *Rocket Boys*, a memoir of his childhood in the mining camp of Coalwood, West Virginia. The following year, Universal Studios released a movie entitled *October Sky* based on Mr. Hickam's book. Plaintiff Brighter Sky is a limited liability company established in New Jersey. Plaintiffs Dan Tramon, Carl Tramon, and Diana Belkowski are all residents of New York or New Jersey, and are the members of the Brighter Sky LLC. In 2006, the Plaintiffs approached Mr. Hickam to seek his approval to create a Broadway musical entitled "Rocket Boys" based on his book of the same name. Mr. Hickam had previously entered into a contract with Universal Pictures to grant Universal the rights to make *October Sky*. However, after requesting Universal to grant him the rights to produce a live stage performance of *Rocket Boys*, Mr. Hickam agreed to begin development of the musical with the Plaintiffs. On May 28, 2008, the Plaintiffs held a staged reading of the musical "Rocket Boys" in Hunstville, Alabama, and in June 2010, the musical was afforded an industry presentation in New York City.

After garnering positive reviews in New York City, the Plaintiffs and Mr. Hickam entered into an "Underlying Rights and Author Collaboration Agreement" wherein Mr. Hickam granted Brighter Sky the exclusive rights to produce a "live stage play" of his novel. (Compl., ¶ 28.) From 2011 to 2013, the Plaintiffs "further honed" the musical "Rocket Boys" through "performance runs at Theatre West Virginia in Beckley, West Virginia." (*Id.* at ¶ 28.) At some point during October 2012, Mr. Hickam's Live Stage Rights to the novel *Rocket Boys* became non-exclusive, and shortly thereafter, Universal Studios entered into discussions with Defendant Aaron Thielen, the Artistic Director for Marriot Theatre, about creating a live stage rendition of Universal's movie *October Sky*. On or about May 30, 2013, Universal's Vice President of Live Theatrics informed Mr. Hickam that it had "agreed that Marriott [Theatre] could produce a [live

2

theatrical] version based on the [novel *Rocket Boys*] and the movie *October Sky*," but "assured Hickam and the Plaintiffs that they would continue to permit performances of 'Rocket Boys.'" (*Id.* at ¶ 36, 38.)

Based on Universal's assurance, the Plaintiffs and Mr. Hickam entered into a licensing agreement with Theatre West Virginia such that "the musical ['Rocket Boys'] would become a historical presentation every year as part of the Theatre's line-up." (*Id.* at ¶ 39.) In the spring of 2015, the Plaintiffs secured a performance of "Rocket Boys" in The Legacy Theatre in Atlanta, Georgia, and Universal's Vice President of Live Theatrics attended this showing. Subsequently, on June 16, 2016, Universal's Vice President of Legal Affairs sent Mr. Hickam's counsel a letter instructing him that any further performances of the "Rocket Boys" musical must be halted "at least until after the October Sky musical had completed its run" at the Marriott Theatre. (*Id.* at ¶ 43.) This "effectively shut down indefinitely" the Plaintiffs' production of the "Rocket Boys" musical. (*Id.* at ¶ 43.) Defendant Marriott ran Universal's "October Sky" musical from August 9 through October 18, 2015, at the Marriott Theatre in Lincolnshire, Illinois. The Plaintiffs allege that the Defendants' "October Sky" musical was "substantially similar" to the Plaintiff's "Rocket Boys" musical, including similar music, score, and stage play. (*Id.* at ¶ 46-47.)

Based on these facts, the Plaintiffs allege one count of copyright infringement, one count of contributory infringement, and one count of vicarious liability. They claim that the Defendants copied the Plaintiffs' scenes, music, sequences, and language "exclusively written for the 'Rocket Boys' [musical] which were not in the novel or motion picture . . . too many times to be coincidental all without the Plaintiffs' permission, authorization and consent." (*Id.* at ¶ 51.)

Bancroft S. Gordon, the Corporate Secretary of Marriott International, Inc., submitted an affidavit stating that Marriott International is a Delaware corporation with its principal place of business in Bethesda, Maryland. (Gordon Affidavit, at ¶ 3) (Document 9-1). He states that "Marriott International's business is focused on managing hotels and franchising and licensing hotels," and that Marriott International does not own or manage any lodging properties in West Virginia, nor does [it] own or operate any theatres in West Virginia." (*Id.* at ¶ 4,6.) According to Mr. Gordon, there were twenty-four hotels branded by Marriott in West Virginia as of September 8, 2017. However, those hotels are all owned, operated, and managed by either third parties under franchise agreements with Marriott International or subsidiaries of Marriott International. Mr. Gordon further states that Marriott International does not own or operate the Marriott Theatre or the Lincolnshire Marriott Resort in Lincolnshire, Illinois.

Terry James, the Executive Producer at the Marriott Theatre, also submitted an affidavit. Mr. James states that the Marriott Theatre is a part of the Lincolnshire Marriott Resort, located in Lincolnshire, Illinois. According to Mr. James, during the time that the "October Sky" musical was produced and shown there, the Marriott Theatre was owned by "LA-RFMBG Lincolnshire LLC, a limited liability company created by the Bricton Group." (James Affidavit, at ¶ 5) (Document 9-2). Mr. James further states that the theatre's production of "October Sky" took place entirely in Illinois, and that he did not visit West Virginia, transact any business in West Virginia, or have any contact with anyone in West Virginia or any of the Plaintiffs.

## STANDARD OF REVIEW

### A. *Personal Jurisdiction—Rule 12(b)(2)*

"In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). West Virginia's long-arm statute, contained in W. Va. Code § 56-3-33(a), "is coextensive with the full reach of due process," and so the statutory and constitutional queries merge. *Id.*; *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *2 (S.D.W. Va. Aug. 12, 2015) (Chambers, C.J.). "A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *Celotex*, 124 F. 3d. at 628 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). When a defendant challenges a court's personal jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "the burden [is] on the plaintiff to ultimately prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). When no evidentiary hearing is held, "the plaintiff need prove only a prima facie case of personal jurisdiction" and "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

A defendant's contacts can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction is available where "the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553,

559 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2860, 192 L. Ed. 2d 896 (2015) (internal quotation marks and citations omitted). The Fourth Circuit has established a three-part test to determine whether specific personal jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (internal punctuation and citations omitted). General jurisdiction is available only if a corporation's contacts with a state "are so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citing and quoting from *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (U.S. 2011)).

B. Venue

28 U.S.C. § 1391(b) provides that:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(c)(2) goes on to state that a defendant is a "resident" of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." When a case is initiated in an improper district or division, Section 1406(a) permits courts to either dismiss the case or transfer it to "any district or division in which it could have been brought." As in motions to dismiss for lack of personal jurisdiction, the plaintiff bears the

burden of establishing that venue is proper, and must make either a prima facie showing, absent an evidentiary hearing, or demonstrate proper venue by a preponderance of the evidence, if the court hears evidence. *Adhikari v. KBR, Inc.*, No. 115CV1248JCCTCB, 2016 WL 4162012, at *3 (E.D. Va. Aug. 4, 2016).

However, §1391 addresses only where cases may be "brought" while § 1441(a) establishes that the proper venue for cases removed from state court lies in "the district court of the United States for the district and division embracing the place where such action is pending." Section 1391 "has no application to…. a removed action." *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66, 73 S. Ct. 900, 902, 97 L. Ed. 1331 (1953); *Smith v. JP Morgan Chase Bank, N.A.*, 727 F. Supp. 2d 476, 479 (S.D.W. Va. 2010) (Goodwin, J.).

Courts may also transfer venue "for the convenience of parties and witnesses, in the interest of justice" when venue is proper in both the transferring district and in another district. 28 U.S.C. § 1404(a). The Fourth Circuit has established four factors for consideration in deciding motions to transfer under § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

C. *Leave to Amend*

Rule 15(a)(1) of the *Federal Rules of Civil Procedure* permits a party to "amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P.

15(a)(1). Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). The Rule further provides that "[t]he court should freely give leave [to amend] when justice so requires." *Id*. However, this opportunity for amendment is not without its limits. The Fourth Circuit has instructed us that a motion to amend should be denied only "if one of three facts is present: the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (citation omitted) (internal quotation marks omitted); *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001).

**DISCUSSION**

The Defendants seek dismissal of the Plaintiffs' complaint for lack of personal jurisdiction in West Virginia, arguing that the Court cannot exercise general or specific personal jurisdiction over any of the Defendants. The Defendants also argue that the Plaintiffs' complaint should be dismissed based on improper venue. The Plaintiffs disagree, and also seek leave to file an amended complaint. The Court will address each of these issues.

    A. *Personal Jurisdiction*

        1. *General Jurisdiction*

The Defendants first argue that the Court cannot exercise general jurisdiction over them because neither the individual nor corporate Defendants are at home in West Virginia. Both Mr. Mahler and Mr. Thielen argue that they are domiciled in Illinois and have never visited West Virginia, own no property or other assets in West Virginia, nor have any business interests in West Virginia such that they could be brought into court under all-purpose jurisdiction standards.

Defendants further argue that Marriott Theatre is an Illinois business that has no property or business connections to West Virginia. The Defendants also assert that while twenty-two hotels in West Virginia operate under a licensing agreement with Marriott International and several other hotels are owned or managed by subsidiaries of Marriott International, Marriott International itself does not own any hotels or theatres in West Virginia. The Defendants argue that the sparse connections Marriott International has with West Virginia are not sufficient to consider it "at home" in the state such that general jurisdiction can be exercised over it.

The Plaintiffs concede that the Court has no jurisdiction over Mr. Mahler, Mr. Thielen, and Marriott Theatre under general jurisdiction principles, but they argue that general jurisdiction is appropriate over Marriott International. Because Marriott International is licensed to do business in West Virginia, maintains an agent for service of process in West Virginia, and employs individuals in West Virginia, it maintains such continuous and systematic contacts that it is subject to the Court's all-purpose jurisdiction.

The Court finds that the Plaintiffs have not shown prima facie evidence that the Court has general jurisdiction over the Defendants, including Marriott International. In 2014, the Supreme Court thoroughly examined its general jurisdiction doctrine in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). In *Bauman*, the Supreme Court considered a jurisdictional issue wherein the respondents sued Daimler AG in United States District Court for the Northern District of California. *Id.* at 120-21. Daimler is a German company that manufactures Mercedes-Benz automobiles in Germany, and the Plaintiffs alleged that its "Argentinian subsidiary, Mercedes-Benz Argentina (MB Argentina) collaborated with state security forces to kidnap, detain, torture, and kill certain MB Argentina workers" during "Argentina's 1976-1983 'Dirty War.'" *Id.* The

plaintiffs in *Bauman* alleged that the district court in California maintained jurisdiction over the suit because another of Daimler's subsidiaries, Mercedes-Benz USA, LLC (MBUSA), had sufficient contacts with California such that it was at home in the jurisdiction and subject to general personal jurisdiction. *Id.* According to the plaintiffs, "[a]lthough MBUSA's principal place of business [was] in New Jersey, MBUSA [had] multiple California-based facilities," and did such a substantial amount of Daimler's business in California, that general jurisdiction was appropriate. *Id.* at 123.

After examining the history of the doctrine of general jurisdiction and the record below, however, the court found that even if MBUSA was considered at home in California, "Daimler's slim contacts with the State hardly render it at home there." *Id.* at 136. The court reasoned that the Plaintiffs' argument, that general jurisdiction should be found "in every state in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" was "unacceptable grasping" in the face of the Supreme Court's precedent following *International Shoe* and its progeny. *Id.* at 137-138. Because the appropriate inquiry is "whether [a] corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum state," and because Daimler's activities in California were not sufficient for the court to exercise jurisdiction over a case involving actions originating in Argentina, the Supreme Court ruled that Daimler was not at home in California and that general jurisdiction over Daimler was not appropriate in a California court. *Id.* at 139. In reaching such a conclusion, the court opined that questions of general jurisdiction in the corporate defendant context "call[] for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n. 20.

Similarly, the Court finds that the Plaintiffs have failed to show prima facie evidence that Marriott International has sufficient affiliations with West Virginia to be considered "at-home." The Plaintiffs argue that Marriott International is at home here because it employs individuals, maintains an agent for service of process, and conducts inspection of hotels. Similar to *Bauman*, however, these affiliations are insufficient to render Marriott International subject to general jurisdiction. Marriott International is a Delaware corporation with a principal place of business in Maryland, and further does not own any hotel properties in West Virginia. While it may employ some individuals and legally accept service of process, an appraisal of its activities nationwide fails to render these business maneuvers adequate to show that Marriott International undertakes its key business decisions or supervises company activity here. *Evans v. Johnson & Johnson*, No. 2:14-CV-29700, 2015 WL 1650402, at *6 (S.D.W. Va. Apr. 14, 2015) (refusing to exercise general jurisdiction over a defendant whose contacts with the forum state consisted of selling significant amount of products, training employees in the forum, allowing access to a corporate website, and maintaining company files and equipment in the forum). Further, the Fourth Circuit has found such activity insufficient to subject a corporate entity to general jurisdiction. *See*, *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in this present context."). Thus, because the Plaintiffs have failed to show that Marriott International is incorporated in, maintains its principal place of business in, or maintains other sufficient contacts with West Virginia to render it at home, Marriott International is not subject to general jurisdiction in this Court.

*2. Specific Jurisdiction*

The Court's inquiry does not end there, however. The Defendants also argue that they are not subject to the specific jurisdiction of the Court because they have not purposefully availed themselves of the laws of West Virginia through their contacts with the state. The Defendants again assert that none of the individual Defendants have ever visited West Virginia, performed in West Virginia, nor caused any performance of a musical to occur in West Virginia. Further, while Marriott International is licensed to do business in West Virginia and employs individuals here, the Defendants assert that the Plaintiffs' claims do not arise out of Marriott International's contacts with West Virginia, because Marriott International neither owns nor operates any theatres here nor owns the Marriott Theatre in Illinois. Thus, the Defendants argue that they do not have sufficient minimum contacts with West Virginia from which the Plaintiffs' claims arise such that they can be subjected to specific jurisdiction in this forum.

The Plaintiffs counter that specific jurisdiction is appropriate. The Plaintiffs contend that Marriott International and Marriott Theatre have purposefully availed themselves of the laws of West Virginia by "purposefully direct[ing] their commercial activities into West Virginia by constructing an interactive e-commerce website accessible to West Virginia residents." (Pls.' Resp. in Opp., at 11.) Because Marriott's website made available Marriott Theatre's "October Sky" musical to West Virginians, and allows West Virginians to book a hotel, the Plaintiffs assert that Marriott International and Marriott Theatre has directed electronic activity into the state and thus created sufficient minimum contacts for specific jurisdiction. The Plaintiffs further argue that the Defendants have availed themselves of the laws of West Virginia by conducting business in the state through Marriott hotels, and because the effects of the Defendants' alleged copyright

infringement are connected to West Virginia such that specific jurisdiction over the Defendants is appropriate.

The Court finds that the Defendants have not had sufficient minimum contacts with West Virginia and specifically, have not purposefully availed themselves of the privilege of doing business in the forum state such that specific personal jurisdiction could be exercised over them without "offend[ing] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Regarding Marriott International and Marriott Theatre's internet activity, the Fourth Circuit has held that

> [a] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). This determination turns on whether the Defendants' website was "interactive," "semi-interactive," or "passive." *Carefirst*, 334 F.3d at 399. A website is interactive when it is operated such that a defendant can "enter[] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet . . . ." *Id.* A website is semi-interactive when it "[o]ccup[ies] a middle ground . . . through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer." *Id.* Finally, a website is passive if "it merely makes information available." *Id.*

Here, the Defendants' website is semi-interactive, because it contains features that allow a user in West Virginia to exchange information with the host computer in the form of booking hotel rooms or purchasing tickets to a musical performed at the Marriott Theatre. However, the Plaintiffs have provided no concrete evidence of any online exchanges between anyone in the forum state and Marriott International or Marriott Theatre, and merely assert that "individuals in West Virginia could . . . decide to travel to Illinois to view '*October Sky*.'" (Pls.' Resp. in Opp., at 12.) Rather than specifically target West Virginia residents, the Defendants' website provides the opportunity to buy tickets to shows or make hotel reservations. This opportunity is a generalized offer to anyone in the United States of America or abroad. A streamlined capability to make a reservation at a Marriott hotel anytime, anywhere, is not a sufficient contact with West Virginia to sustain personal jurisdiction within the traditional bounds of fair play and substantial justice. *See*, *Carefirst*, 334 F.3d at 401 (finding that a semi-interactive website's general request that "anyone, anywhere make a donation" is not a sufficient minimum contact to sustain specific jurisdiction).

Moreover, even if Marriott International's contacts with West Virginia through their subsidiaries' hotels or their website were sufficient to satisfy the minimum contacts prong of the specific jurisdiction analysis, the Plaintiffs' causes of action do not arise out of those contacts. As previously stated, Marriott's contacts with the forum state consist of Marriott International's maintenance of an agent in West Virginia for service of process, and its employment of individuals at hotels owned by its subsidiaries or franchised to other third-party entities. The individual Defendants have never been to or transacted business in West Virginia, however, and the Defendants have not attempted to perform their "October Sky" musical in West Virginia or anywhere other than Illinois. The Plaintiffs' allegations of copyright infringement of a musical

14

do not arise out of Marriott International's hotel business contacts. Marriott International does not own the Marriott Theatre, and the Theatre's alleged copying of the Plaintiffs' "Rocket Boys" musical does not arise out of Marriott International's employment of individuals in West Virginia hotels.

Nor is specific jurisdiction satisfied by the Plaintiffs' emphasis on the effects of the Defendants' tortious actions and the fact that those effects were felt in West Virginia. The Plaintiffs argue that the harm to the Plaintiffs occurred in West Virginia because they were unable to contract with Theatre West Virginia, effectively "bann[ing] ['Rocket Boys'] from its home." (Pls.' Resp. in Opp., at 15.) It is true that, because the Plaintiffs intended to contract their musical to Theatre West Virginia in perpetuity such that it would become a historical presentation, the brunt of the effect of the Defendants' actions were felt in West Virginia. However, those effects "must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." *Carefirst*, 334 F.3d at 401 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)). As previously explained, neither Marriott International nor Marriott Theatre's internet activities constitute sufficient minimum contacts. To the extent Marriott International's contacts with West Virginia were sufficient, the Plaintiffs' copyright infringement claims have nothing to do with Marriott International's employment of certain hotel workers.

In sum, the Defendants' internet website does not create a sufficient minimum contact with the forum state for the purposes of specific personal jurisdiction. Even if it did, however, neither the internet contacts nor Marriott International's contacts with West Virginia are the contacts from which the Plaintiffs' copyright infringement claims arise. The Plaintiffs have therefore failed to

provide sufficient evidence to support a prima facie case that the Defendants' contacts with West Virginia are sufficient to bring them into West Virginia court without offending the traditional notions of fair play and substantial justice.

The Court further finds that the Plaintiffs' motion to conduct limited jurisdictional discovery should be denied. According to the Fourth Circuit, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst*, 334 F.3d at 402. Here, the Plaintiffs have done just that. The Plaintiffs' response to the motion to dismiss makes no concrete proffer as to any meaningful contacts with the forum outside of the Defendants' website, and there is no indication of fraud or misconduct on the part of the Defendants. Again, to the extent that Marriott International does have sufficient minimum contacts, the Plaintiffs' copyright claims do not arise out of those contacts, and no further discovery is necessary.

### B. Venue

The Defendants also seek dismissal of the Plaintiffs' complaint for improper venue. Because the Court has previously found that it cannot exercise personal jurisdiction over the Defendants, the Court need not address whether this venue is proper.

### C. Plaintiffs' Motion to Amend

Finally, the Plaintiffs move the Court for leave to amend their complaint. The Plaintiffs argue that they have discovered additional Defendants who have committed unlawful acts, and that amendment is proper because they do not wish to change or replace any theory of the case, nor plead any additional theories. They assert that because substantial discovery time remains, and because the Defendants will not be prejudiced, their leave to amend should be granted.

The Defendants counter that the Plaintiffs have failed to address the deficiencies in their proposed amended complaint, and amending their complaint would thus be futile. The Defendants contend that the Court would not have personal jurisdiction over the new Defendants that the Plaintiffs seek to add in their amended complaint, and further contend that the information provided in the new complaint fails to allege facts to support the Court's exercise of personal jurisdiction over the Defendants in the original complaint.

After thoroughly reviewing the Plaintiffs' proposed *Amended Complaint* (Document 14-1), the Court finds that the Plaintiffs' amendment would be futile. According to the Fourth Circuit, "a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." *Equal Rights Ctr. V. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). As previously stated, a court may deny a motion to amend a complaint if the amendment would be futile. *Id.* "An amendment is futile where even if it is permitted the amendment would not save the complaint from a motion to dismiss." *Hurley v. Wayne Cty. Bd. of Educ.*, No. CV 3:16-9949, 2017 WL 2454325, at *3 (S.D.W. Va. June 6, 2017) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

Here, the Plaintiffs' proposed amended complaint removes Marriott Theatre as a defendant and replaces it with the following entities: Bre Diamond Hotel, LLC (Bre Diamond), a Delaware limited liability company, DTRS Lincolnshire, LLC (DTRS), a Delaware limited liability company with its principal place of business in Chicago, Illinois, Marriott Hotel Services, Inc. (MHS), a Delaware corporation, and LA-RFMBG Lincolnshire, LLC, a Delaware limited liability company with its principal place of business in Mt. Prospect, Illinois. The Plaintiffs' proposed amended complaint refers to those four entities collectively as "Defendant Marriott Theatre."

The Plaintiffs conceded in their response to the Defendants' motion to dismiss that the Court could not exercise personal jurisdiction over Marriott Theatre itself, but asserted that it may have personal jurisdiction over Marriott International. Similarly, the Plaintiffs' proposed amended complaint states that Bre Diamond, DTRS, MHS, and LA-RFMBG are all entities formed in Delaware. Their amended complaint also states that DTRS has its principal place of business in Chicago, and LA-RFMBG has its principal place of business in Mt. Prospect, Illinois. According to Bancroft Gordon, corporate secretary of Marriott International, MHS has its corporate headquarters and principal place of business in Bethesda, Maryland. (Bancroft S. Gordon Declaration, ¶ 9) (Document 19-3.) Further, according to Andrew Thomas, counsel for Defendants, Bre Diamond has been known as Strategic Hotels & Resorts, LLC, since March 3, 2017. (Andrew J. Thomas Declaration, ¶ 3) (Document 19-4.) Mr. Thomas further stated Strategic Hotels & Resorts is organized under the laws of Delaware and maintains its principal place of business in Illinois. (*Id.* at ¶ 4.) None of these proposed Defendants have conducted any business in West Virginia outside of their affiliation with Marriott International and its website.

For the reasons previously stated, the Court finds that the Plaintiffs have failed to set forth prima facie evidence that the Court can exercise personal jurisdiction over any of the four proposed Defendants. None of the newly proposed Defendants are organized in or maintain principal places of business in West Virginia, nor do they conduct any business in West Virginia. Outside of their connection to Marriott International and its website, which is available to residents of all fifty states, these proposed Defendants have no contacts with West Virginia that would render them "at home" such that general jurisdiction would be appropriate for the same reasons Marriott

Theatre itself was not at home in West Virginia. Further, none of the proposed Defendants have conducted any business in West Virginia sufficient to purposefully avail themselves of the right to do business here such that specific jurisdiction would be appropriate. Insofar as these proposed Defendants are affiliated with Marriott International, which does not own or operate the Marriott Theatre, the Court's previously stated findings regarding Marriott International's website apply. Thus, because it would be improper to exercise personal jurisdiction over the newly proposed Defendants, the Plaintiffs' amended complaint would be futile.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss* (Document 8) be **GRANTED** and the *Plaintiffs' Motion for Leave to File Amended Complaint* (Document 14) be **DENIED**. The Court further **ORDERS** that all pending motions be **TERMINATED AS MOOT**, and that this action be **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 16, 2018

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA